2008-NMCA-003

175 P.3d 327

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Rene LUJAN, Defendant–Appellant.**

**No. 26,315.**

Court of Appeals of New Mexico.

Nov. 15, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Rene Lujan (Defendant) appeals his conviction for possession of cocaine, arguing that the district court should have granted his motion to suppress drug evidence discovered in the course of a search incident to his arrest on a warrant. Probable cause for the warrant was founded on evidence later suppressed that had been seized fifteen days earlier when officers improperly entered Defendant's home. We reverse, holding that discovery of the drugs was fruit of the poisonous tree.

## I. BACKGROUND AND FACTS

{2} Because this appeal involves the interrelationship of two criminal cases in district court, we set forth the facts of both in some detail, even though only one of the cases is directly on appeal here. On February 11, 2004, Defendant was arrested for possession of marijuana in connection with a drug raid on Tilden Street in Roswell. Because of the small amount, Defendant was issued a citation and not taken into custody.

Pursuant to police department procedure, the officers asked Defendant to verify his address. He produced a driver's license, but stated that the address shown on it was no longer correct, as he now lived at a residence on Richardson Street in Roswell. The officers took Defendant to that address where he unlocked the door with a key. Not satisfied, the officers asked for permission to enter to look for address documentation to which Defendant agreed. Noticing two firearms in plain view, one of the officers asked Defendant if he was a convicted felon, and Defendant admitted that he was. The officers seized the firearms, but did not arrest Defendant at that time.

{3} Fifteen days later, on February 26, 2004, the officers again encountered Defendant at the Tilden Street address. By this time, an arrest warrant had been issued on a felon in possession of a firearm charge arising from the February 11 encounter. The officers arrested Defendant pursuant to that warrant and conducted a search incident to arrest, which turned up drugs. Defendant thus had two criminal cases pending after February 26, in addition to the citation for possession of marijuana: (1) the felon in possession of a firearm charge and a related receiving stolen property charge; and (2) a drug charge based on the search incident to his arrest. Only the drug case is at issue in this appeal.

{4} In the felon-in-possession case, Defendant moved to suppress evidence—the firearms and statements—obtained in the course of the purportedly consensual entry of his residence on February 11. In the drug case before us here, Defendant moved to suppress evidence—drugs and statements—obtained as a result of the February 26 search incident to his arrest upon the firearms charge. The basis for the latter motion to suppress was that the evidence was the fruit of the purportedly illegal entry of his residence on February 11.

{5} In a July 8, 2005 letter decision addressing the motions to suppress in both cases, the district court ruled that the evidence in the firearms case should be suppressed because the officer's entry of Defendant's home on February 11 was the product

of duress or coercion and was without probable cause or valid consent. The district court declined to suppress the evidence in the drug case as discussed below. The State did not appeal the suppression of the firearms and filed a nolle prosequi on the felon-in-possession case. Defendant pleaded no contest to possession of a controlled substance, reserving the right to appeal the denial of his motion to suppress. It is this appeal we consider here.

## II. STANDARD OF REVIEW

{6} In *State v. Gutierrez (Gutierrez I)*, our Court held the following:

Reviewing motions to suppress involves an analysis of both law and fact. The denial of a motion to suppress requires us to determine if the law was correctly applied to the facts. We give deference to the factual findings of the lower court. A denial of a motion to suppress will not be disturbed if it is supported by substantial evidence unless it also appears that the ruling was incorrectly applied to the facts. The trial court must resolve conflicts in the evidence, but [w]hether that evidence complies with constitutional requirements is . . . a legal question reviewed by the appellate court on a *de novo* basis.

2005–NMCA–015, ¶ 9, 136 N.M. 779, 105 P.3d 332 (internal quotation marks and citations omitted).

## III. DISCUSSION

■ {7} In his motion to suppress evidence and statements in district court, Defendant relied on the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. In *State v. Gomez*, 1997–NMSC–006, 122 N.M. 777, 932 P.2d 1, our Supreme Court adopted an interstitial approach to the examination of claims of constitutional violation made pursuant to both the United States Constitution and the New Mexico Constitution. "Under the interstitial approach, the court asks first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined." *Id.* ¶ 19.

Under our rules, "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." Rule 12–216(A) NMRA. Where a defendant claims a violation of both the state and federal constitutions, the issue may be preserved as follows:

If established precedent construes the provision to provide more protection than its federal counterpart, the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue.

*Gomez*, 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1.

However, when a party asserts a state constitutional right that has *not* been interpreted differently than its federal analog, a party also must assert *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision.

*Id.* ¶ 23.

{8} As discussed below, we determine that the right being asserted by Defendant would not be protected by the federal constitution, but that established New Mexico precedent governs resolution of the claim under our state constitution. Accordingly, we conclude that Defendant has preserved the issue of whether his rights under Article II, Section 10 were violated.

■ {9} The constitutional issue in this case concerns the reach of the exclusionary rule and the fruit of the poisonous tree doctrine. The basic exclusionary rule originated in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) where the Supreme Court ruled that certain papers unlawfully seized from the defendant could not be used in his trial in federal court for unlawful use of the mails. *Id.* at 386, 398. The fruit of the poisonous tree doctrine states that the exclusionary rule applies not only to evidence unlawfully seized, but also to evi-

dence derived from the original illegality. *State v. Monteleone*, 2005–NMCA–129, ¶ 16, 138 N.M. 544, 123 P.3d 777. "The United States Supreme Court has consistently barred the admission of legally obtained evidence derived from past police illegalities under the so-called 'fruit of the poisonous tree' doctrine. The Court has specifically applied the doctrine where the challenged evidence was obtained after an illegal arrest or detention." *State v. Bedolla*, 111 N.M. 448, 454, 806 P.2d 588, 594 (Ct.App.1991) (citations omitted).

{10} Seventy years after *Weeks*, in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), the Supreme Court analyzed the effect of the exclusionary rule on deterring police conduct that violates the Fourth Amendment. The Court announced a good faith exception allowing use at trial of evidence seized by officers "reasonably relying on a warrant issued by a detached and neutral magistrate," where the warrant is later ruled to have been unlawfully issued. *Id.* at 913, 104 S.Ct. 3405. The Court specified three reasons for creating this exception to the basic exclusionary rule.

First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.

Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

*Id.* at 916, 104 S.Ct. 3405 (footnote omitted).

{11} Even before *Leon*, the Supreme Court described a good faith exception to the exclusionary rule in the context of a search incident to arrest. In *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the defendant was arrested pursuant to a city ordinance requiring individuals stopped and questioned by police to identify themselves. In the search incident to the arrest, drugs were found on the defendant's person. The defendant was not charged under the city ordinance, but was charged with possession of drugs. The Michigan Court of Appeals ruled that the city ordinance was unconstitutionally vague and granted the defendant's motion to suppress the drugs. The United States Supreme Court reversed, holding that the good faith arrest was not rendered unlawful by the later ruling that the ordinance was unconstitutional.

{12} Under the principles set forth in *Leon* and *DeFillippo*, it appears that, in the present case, Defendant would not prevail under a Fourth Amendment analysis, as nothing indicates that the arrest warrant, using the seized firearms as probable cause, resulted from bad faith on the part of either the arresting officers, or the magistrate who approved the arrest warrant. Thus, under *Gomez*, we proceed to consider the issue under Article II, Section 10 of the New Mexico Constitution.

{13} In recognizing good faith exceptions to the exclusionary rule, the United States Supreme Court viewed the rule as a remedial measure and focused on the question of whether its application would have a deterrent effect on future violations of the Fourth Amendment. Our Supreme Court took a different view in *State v. Gutierrez (Gutierrez II)*, 116 N.M. 431, 863 P.2d 1052 (1993), rejecting a good faith exception to the exclusionary rule and stating the following:

Denying the government the fruits of unconstitutional conduct at trial best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent as if the government's officers had stayed within the law. The basis we articulate today for the exclusionary rule in this state—to effectuate the constitutional right in the pending case—is incompatible with any exception based on the good-faith reliance of the officer on the magistrate's determination either of probable cause or of the reasonableness of the search.

*Id.* at 446–47, 863 P.2d at 1067–68 (footnote omitted).

{14} In *State v. Wagoner,* our Court held as follows:

> The exclusionary rule under Article II, Section 10 of the State Constitution is a constitutional right belonging to the individual. If the State conducts a search without a warrant and without sufficient grounds for an exception to the warrant requirement, we will suppress the evidence to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure.

2001–NMCA–014, ¶ 29, 130 N.M. 274, 24 P.3d 306 (internal quotation marks and citations omitted).

{15} In deciding not to suppress the drug evidence in the present case, the district court in its letter ruling relied on a deterrence analysis, asking: "What deterrence value is served now by declaring the *execution* of a properly issued arrest warrant[ ] illegal?" The district court further stated as follows: "The deterrence value of suppression perhaps can be imagined but absent evidence of bad faith or other wrongful conduct, the likelihood of deterrence seems extremely remote." The district court cited *Wagoner* as authority for this analysis. *Wagoner,* however, discusses the deterrence effect of the exclusionary rule in the course of contrasting the federal and New Mexico approaches to the independent source exception to the exclusionary rule. As discussed above, under Article II, Section 10 of the New Mexico Constitution, the exclusionary rule "is a constitutional right belonging to the individual." *Wagoner,* 2001–NMCA–014, ¶ 29, 130 N.M. 274, 24 P.3d 306. Thus, while the district court may well be correct in its conclusions about deterrence in this case, under *Gutierrez II,* the relevant question is not the degree of deterrence; it is whether a defendant's right to be free from unreasonable searches and seizures has been violated. Our Supreme Court explained as follows: "Denying the government the fruits of unconstitutional conduct at trial best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent as if the government's officers had stayed within the law." 116 N.M. at 446, 863 P.2d at 1067.

{16} Had Defendant been arrested on February 11 immediately after the officers observed the firearms in his home, the fruit of the poisonous tree doctrine would have more plainly applied to require suppression of the drugs found incident to his arrest. *See State v. Bricker,* 2006–NMCA–052, 139 N.M. 513, 134 P.3d 800 (suppressing drug evidence found in the defendant's wallet during booking procedure where the arrest was for a traffic offense not requiring custodial arrest); *State v. Warren,* 103 N.M. 472, 709 P.2d 194 (Ct.App.1985) (suppressing drug evidence found after the officer arrested the defendant without a warrant for a misdemeanor not committed in the officer's presence). In Defendant's case, had the officers' entry of his home not been improper, the officers apparently could have arrested him on the spot, as they had observed the firearms, and Defendant admitted that he was a felon. As it happened, the officers decided to obtain a warrant. We do not believe the mere passage of time, without more, should change our analysis. That is, once the officers' improper entry had occurred, the subsequent arrest and search incident to it arose from the entry regardless of whether the arrest occurred fifteen minutes or fifteen days after the officers observed the firearms.

{17} The facts of the case before us resemble those of *State v. Gurrola,* 121 N.M. 34, 908 P.2d 264 (Ct.App.1995). In *Gurrola,* the defendant was arrested pursuant to a bench warrant issued almost five months earlier, but never signed by a judge. Upon his eventual arrest, Defendant was found to be in possession of marijuana. Finding the unsigned warrant invalid, this Court suppressed the marijuana notwithstanding the passage of time. The main difference between *Gurrola* and the present case is that, in *Gurrola,* the warrant was found to have been invalid from the beginning as it was never signed. This Court, after determining that the absence of a judge's signature rendered the warrant invalid, straightforwardly applied *Gutierrez II* and held that the marijuana must be suppressed regardless of the officers' good faith. In the present case, the

defect in the warrant—the absence of valid probable cause—was not established until well after the warrant was executed. We do not consider the factual difference between this case and *Gurrola* to be significant.

{18} In reaching our result, we reject the State's suggested approach to this case. The State would have us review the propriety of the February 11 entry of Defendant's home, and find that there was no poisonous tree after all. Although the State did not appeal the issue in district court, it now argues that the officers' entry on February 11 was consensual, notwithstanding the district courts ruling that it was the product of duress and coercion. Thus, the State argues that the firearms that the officers observed in the course of that entry were properly used as the basis for the warrant pursuant to which Defendant was arrested on February 26. The State never appealed the district court's ruling that the firearms should be suppressed and filed a nolle prosequi on the felon-in-possession charge.

{19} The State cites no convincing authority for the proposition that this Court may revisit an unappealed dispositive ruling of the district court in a different, but related, matter, conclude that the district court was wrong, and use that purported error as the foundation for affirming the ruling that is actually before this Court. We are not persuaded by *State v. Muniz*, 2003–NMSC–021, 134 N.M. 152, 74 P.3d 86, which the State cites. There, the Supreme Court chose to frame the central issue before it differently than the defendant had and, ultimately, found it unnecessary to reach the narrow question the defendant had presented. Reversing this Court, the Supreme Court in *Muniz* concluded that the district court had acted properly in sentencing the juvenile defendant as an adult, notwithstanding the fact that the State had previously conceded error on this issue. Similarly, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 246–47 n. 12, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), also cited by the State, stands for the simple proposition that the United States Supreme Court is not jurisdictionally prohibited from addressing questions outside the scope of the Court's order granting certiorari "when resolution of those questions is necessary for the proper disposition of the case." *Id.* Neither *Muniz*, nor *Piper Aircraft*, nor any case we can find, suggests that this Court may reach a desired conclusion through back-door review and hypothetical reversal of an unappealed ruling in another case.

{20} Although we decline to review whether the officers' entry of Defendant's home on February 11 was consensual, we observe, in passing, that nothing about the district court's ruling on this question strikes us as wrong. As the circumstances surrounding the entry are described by the State, the district court's conclusion that Defendant's consent was obtained through coercion and duress does not seem unreasonable or inconsistent with the facts.

## IV. CONCLUSION

{21} Having determined that the drugs discovered during the search incident to Defendant's arrest on February 26, 2004, were a direct result of the improper entry of his home on February 11, 2004, and thus were fruit of the poisonous tree, we conclude that Defendant's motion to suppress the drug evidence and statements should have been granted. Accordingly, Defendant's conviction is reversed, and the case is remanded to the district court for proceedings consistent with this opinion.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.