**Certiorari Granted, March 1, 2013, No. 33,938**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-033**

**Filing Date: November 1, 2012**

**Docket No. 31,498**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**GREGG CROCCO,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Anthony J. Ayala
Albuquerque, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}** Following a warrantless police entry into a private residence, Defendant Gregg Crocco was arrested and charged with aggravated driving while intoxicated, contrary to NMSA 1978, Section 66-8-102(D)(1) (2008) (amended 2010). His trial counsel did not move to suppress evidence that resulted from the warrantless entry. Defendant was convicted and he appeals, arguing, among other things, that the police made an unconstitutional warrantless entry into the residence and that his counsel was ineffective for failing to move to suppress the evidence obtained as a result. We hold that Defendant has

1

made a prima facie showing of ineffective assistance of counsel based on his counsel's failure to move to suppress evidence gained from the warrantless entry. We reverse Defendant's conviction and remand for a new trial.

## BACKGROUND

**{2}** Officer Charles Weaver of the City of Rio Rancho, New Mexico, Police Department was dispatched to 1584 15th Avenue in Rio Rancho, in response to a 911 call that "an individual . . . had [driven] to a residence on 15th Avenue, driven in the front yard, hit some property, and had entered a residence. The [occupants of which] did not know him, and the subject then left." The individual was later identified as Defendant. Having obtained fragments of a license plate number and a description of the vehicle, a green Ford Explorer, Officer Weaver began looking one street over, on 14th Avenue, from the address of the original incident. He immediately located a vehicle that matched the description he had received. The vehicle was parked on the street in front of 1690 14th Avenue. A registration inquiry of the vehicle, returned Defendant's name and an address in Corrales, New Mexico.

**{3}** Based on his observation that the vehicle was "very warm to the touch" and based on the fact that it matched the description he had received from dispatch, Officer Weaver called for his back up officer, Sean Ginn. Officer Weaver then looked inside the vehicle and observed a pint-size bottle of vodka, empty except for a small amount of clear liquid. When Officer Ginn arrived, Officer Weaver focused his attention on the residence in front of which the vehicle was parked.

**{4}** As to his next steps, Officer Weaver testified as follows:

> I proceeded to the front of [the] residence, 1690 14th Avenue. Officer Ginn was with me. We were observing the exterior of the residence. We then went up to the front door of the residence. I was somewhat concerned, given the totality of the call that we were on, as far as the person reportedly had entered a residence that he was not known to be—wasn't supposed to be there. People didn't know him. So I didn't know what this individual's intentions were that had made that—approached the original caller, so I went up to that house, now at 1690 14th Avenue, rang the doorbell several times, knocked on the door to attempt to get somebody to come out.

Officer Weaver testified that he did not hear or see anything, and that there were no signs of movement inside the house. The door was unlocked and, having opened it, Officers Weaver and Ginn announced themselves as police officers. From the threshold of the front door, they could see a pair of legs sticking out as though they were on a couch in the living room toward the back of the house. Officer Weaver then "directed [his] announcements in [the] direction" of the legs. He "got no response at all[,]" and he "didn't see any signs of movement from the legs." The officers entered the house and "slowly continued through the house" toward the legs. Officer Weaver testified that "[w]e . . . cleared our way back to

2

where the legs were at. They belonged to [Defendant]."

**{5}** According to Officer Weaver, he and Officer Ginn "entered . . . the residence in order to identify the occupants of the home and any other problems that were going on there, because [he] was concerned at that point in time for the safety of the folks within." Officer Ginn offered a similar account of their reason for entering the house. He testified that "[b]ased on the . . . information that [Defendant] had entered a home that was not his, we felt it was up to us to check the safety of the occupants inside the home[.]"

**{6}** While Officer Ginn "clear[ed] the rest of the house for other occupants[,]" Officer Weaver stayed with Defendant. The officer "tried waking him up, yelling at him, [and] shaking him." To Officer Weaver, "[i]t was clear . . . that [Defendant] was sleeping or passed out, and he exhibited extreme signs of intoxication." After "several moments[,]" Defendant woke. Officer Weaver testified that he tried to ask Defendant whether he lived in the house and whether he knew whose house it was but, aside from yelling profanities, Defendant responded initially by "just staring" at the officer. "[B]ecause of his mannerisms, because of his screaming profanities and not being cooperative, [Officer Weaver] placed [Defendant] in handcuffs[.]"

**{7}** Defendant told Officer Weaver that the house belonged to somebody named Michael. Officer Weaver found some mail on the kitchen counter addressed to "Michael" so he "was somewhat relieved that [Defendant knew] the name of the individual there." Defendant did not respond to Officer Weaver's inquiries regarding whether he had permission to be in the house or whether the residents of the house knew he was there. Officer Weaver took Defendant out of the residence and placed Defendant in his patrol car "so as to continue the investigation." "Ultimately," Officer Weaver testified, "based on the information that [he and Officer Ginn] had that warranted [a driving while intoxicated] investigation[,]" he contacted an officer from the DWI unit to further conduct such an investigation.

**{8}** Officer Joel Holt, of the DWI unit, administered a series of field sobriety tests upon Defendant. Based on his observations of Defendant's performance on the field sobriety tests, as well as the information he had received from the other two officers, Officer Holt determined that Defendant was impaired, and he placed Defendant under arrest for driving while intoxicated. At the police station, Defendant submitted two breath samples, the results of which revealed Defendant's breath alcohol content to be .26 and .27, more than twice the legal limit.

**{9}** Following a bench trial, Defendant was convicted of aggravated driving while intoxicated. After trial, but before sentencing, Defendant moved for and was granted leave to substitute his counsel in this matter. Through his new counsel, Defendant moved to set aside the verdict or for a new trial. Defendant's motion was based on ineffective assistance of counsel, particularly the failure of his trial counsel to move to suppress evidence that was, in Defendant's view, "obtained following an illegal entry and search of a home where [D]efendant was allowed to stay."

3

**{10}**    The district court held a hearing on Defendant's motion for a new trial based on ineffective assistance of counsel. The court denied the motion based, in part, on the absence in the record of any evidence of Defendant's standing to object to the warrantless entry. Additionally, the court found that:

> [the officers'] entry into the home was reasonable, not only for officer safety, because I don't believe they really felt they were in danger, but more of the safety of any potential occupants of this residence, because they already had a report where someone had entered the wrong residence. And their continued investigation into the DWI was also reasonable based upon information that they had at the time.

**{11}**    Defendant was sentenced in accordance with the guilty verdict, and he appeals from the final judgment and sentence. On appeal, Defendant argues that his trial counsel was ineffective because he did not move to suppress evidence on the grounds that the warrantless police entry into the house in which Defendant was arrested violated the United States and New Mexico Constitutions. He presents an argument encompassing the evidentiary and legal support for a motion to suppress which, in his view, establishes a prima facie case of ineffective assistance of counsel. And he requests that we order the evidence suppressed and reverse his conviction.

**{12}**    Contrary to the district court's conclusion that Defendant's motion for a new trial based on ineffective assistance of counsel was "not well-taken," we hold that Defendant has made a prima facie showing of ineffective assistance of counsel based on his trial counsel's failure to move to suppress evidence based on the warrantless police entry into the residence. We reverse Defendant's conviction. Defendant is entitled to a new trial. Because we reverse Defendant's conviction on this basis, we do not consider Defendant's remaining arguments.

**DISCUSSION**

**{13}**    The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. To evaluate a claim of ineffective assistance of counsel, we apply the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Dylan J.*, 2009-NMCA-027, ¶ 36.

**{14}**    The first requirement of the *Strickland* test is a showing by the defendant "that counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, "the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of . . . a trial whose result is reliable." *Id.* To warrant reversal, a defendant must affirmatively meet both requirements. *See id.* In this

4

case, Defendant meets both requirements of the *Strickland* test.

**Counsel's Performance Was Deficient**

**{15}** Defendant argues that his trial counsel was ineffective for failing to move to suppress the evidence obtained as the result of the officers' warrantless entry into the residence. Defendant contends that "the officers had no objectively reasonable basis to believe that the home they entered was the home that . . . Defendant had gone into, or that a person was in the home, much less that a person was in need of assistance." Accordingly, Defendant argues, there was "no exigency that would permit the officers to enter a private home without a warrant."

**{16}** In order to satisfy the reasonableness prong of the ineffective assistance of counsel test in the context of counsel's failure to move to suppress evidence, we consider two questions. *See Patterson*, 2001-NMSC-013, ¶ 19. First, we consider "whether the record supports the motion[.]" *State v. Martinez*, 1996-NMCA-109, ¶ 33, 122 N.M. 476, 927 P.2d 31. Second, we consider "whether a reasonably competent attorney could have decided that a motion to suppress was unwarranted." *Id.* (internal quotation marks and citation omitted).

**{17}** We believe the record supports a motion to suppress based on the warrantless police entry. "An officer's warrantless entry into a person's home is the exact type of intrusion against which the language of the Fourth Amendment to the United States Constitution . . . . is directed." *State v. Gutierrez*, 2008-NMCA-018, ¶ 16, 143 N.M. 422, 176 P.3d 1154. Thus, "[w]arrantless searches and seizures inside a home are presumptively unreasonable, subject only to a few specific, narrowly defined exceptions." *State v. Ryon,* 2005-NMSC-005, ¶ 23, 137 N.M. 174, 108 P.3d 1032. Pertinent to this case is the exception that allows police, when acting in their community caretaker role under the emergency assistance doctrine, to enter a home without a warrant or consent. *See id.* ¶¶ 25-26 (stating that of the three distinct doctrines, under the community caretaking exception, the one that is applicable to warrantless intrusions into personal residences is the emergency assistance doctrine). The emergency assistance doctrine justifies a warrantless entry where police have "a strong perception that action is required to protect against imminent danger to life or limb[.]" *Id.* ¶ 31. Officers Weaver and Ginn testified that their decision to enter the house was prompted by a concern for the safety of the residents.

**{18}** For the emergency assistance doctrine to apply, the State must establish that (1) the police had reasonable grounds to believe that there was an emergency at hand and "an immediate need for their assistance for the protection of life or property[,]" (2) the search must not have been "primarily motivated by intent to arrest and seize evidence[,]" and (3) there was "some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Id.* ¶ 29 (internal quotation marks and citation omitted).

**{19}** As to the first factor, the *Ryon* Court indicated that the emergency assistance doctrine

5

requires an emergency. *See id.* ¶ 31. In evaluating this factor, courts should consider "the purpose and nature of the dispatch, the exigency of the situation based on the known facts, and the availability, feasibility[,] and effectiveness of alternatives to the type of intrusion actually accomplished." *Id.* ¶ 32 (internal quotation marks and citation omitted). Here, police were responding to a 911 call made by Andrew Ayala, a resident of 1584 15th Avenue. According to Mr. Ayala's testimony, he was sitting in his kitchen, when he and his sister heard a car approach and "a bump." Mr. Ayala looked outside to see Defendant, whom he did not know, approaching the front door. The front door of Mr. Ayala's home was unlocked, and Defendant opened it "and staggered in a few steps before [Mr. Ayala] stopped him." Mr. Ayala asked Defendant what he was doing there, and Defendant "looked up [at Mr. Ayala], and it seemed like [Defendant] was scared, and [then] he just started to walk . . . . back to his car." Mr. Ayala realized that the bump he heard was the sound of Defendant having hit the wishing well in his front yard.

**{20}** Despite the obviously alarming circumstance of a stranger entering one's home, we note that Mr. Ayala apparently did not feel particularly threatened by Defendant. Nor did Officer Weaver's account of the information provided by the 911 dispatcher indicate that the caller had felt that he had been in danger. To the contrary, Mr. Ayala described Defendant as having seemed scared and immediately retreating from his encounter with Mr. Ayala. That Defendant did not appear to have posed any threat to "life or limb" of the residents of 1584 15th Avenue casts some doubt on the officers' testimony that their concern for the safety of the residents of 1690 14th Avenue rose to the level of concern that would justify a warrantless entry into that residence. *See Ryon*, 2005-NMSC-005, ¶¶ 31-32 (explaining that courts should consider the nature of the dispatch and that the emergency assistance doctrine requires "a strong perception that action is required to protect against imminent danger to life or limb" before a warrantless home entry will be justified); *cf. State v. Trudelle*, 2007-NMCA-066, ¶ 37, 142 N.M. 18, 162 P.3d 173 (rejecting the officers' stated general safety concerns and explaining that, absent "credible and specific information about possible victims[,]" the officers were not entitled to enter a private residence as community caretakers).

**{21}** Nor does it appear from the record that the officers took or considered any additional or alternative measures to confirm the need for, or to avoid making, an unnecessary warrantless entry into the residence. *See Ryon*, 2005-NMSC-005, ¶ 32 (noting that the question whether officers took additional or alternative measures must be considered in determining the reasonableness of the entry). Rather, the officers appear to have almost immediately determined, based on the fact that Defendant's vehicle was parked on the street in front of the residence, that a warrantless entry was justified based on their "concern" for its supposed occupants. In light of the facts actually known to the officers at the time, their warrantless entry was not justified under the first *Ryon* factor. *See id.* ¶¶ 43-44, 46 (concluding that a warrantless home entry was not justified where there was no "obvious life-threatening emergency" and the officers had only "generalized, nonspecific information that [the d]efendant might be inside" and explaining that in light of what little they actually knew, the officers should have taken steps to corroborate their suspicions by, for example,

6

looking in windows, as opposed to "immediately entering the home").

**{22}** The second *Ryon* factor calls for an examination of the subjective intent of the officers in making the warrantless entry.[1]  *Id.* ¶¶ 33, 37.  Under this factor, we examine the "primary motivation" behind the officers' decision to enter the home.  *Id.* ¶ 36.  "The protection of human life or  property in imminent danger must be the motivation for the initial decision to enter the home rather than the desire to apprehend a suspect or gather evidence for use in a criminal proceeding."  *Id.* (emphasis, alterations, internal quotation marks, and citation omitted).  "The ultimate issue is whether officers had a reasonable concern that an individual's health would be endangered by a delay, and in fact were motivated by a need to address that concern."  *Id.*

**{23}** In this case, although both of the officers testified that their decision to enter was motivated by a concern for the safety of the occupants of 1690 14th Avenue, there was no evidence to support a reasonable subjective belief by the officers that there existed any imminent danger or that a delay would have exacerbated that danger.  Officer Weaver explained that he was "somewhat concerned" based on Defendant's having entered 1584 15th Avenue and he "didn't know what [Defendant's] intentions were" so he "went up to [the] house . . . at 1690 14th Avenue, rang the doorbell several times, [and] knocked on the door to attempt to get somebody to come out."  Officer Weaver did not hear or see anything inside the house.  There was no evidence that anyone saw Defendant enter the residence, and the officers' only basis for concluding that Defendant had entered that particular residence was the fact that his vehicle was parked on the street in front of the house.

**{24}** On this record, we see little basis for the officers to have formed a subjective belief that there was even anyone inside the house, and less basis for the officers to have reasonably believed that delaying entry in order to seek a warrant would have endangered any individual's life or health.  *See id.* ¶¶ 36-37.  Significantly more is required for police to enter a private residence without a warrant than an officer being "somewhat concerned" about the intentions of someone who may have entered the residence.  *See id.* ¶ 35 ("The emergency assistance doctrine is not applicable . . . unless the entry is motivated by the perceived need to act immediately in order to save a life."); *see also United States v.*

---

[1]  Since our Supreme Court decided *Ryon*, the United States Supreme Court in *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 405 (2006), clearly renounced consideration of the officers' subjective motivation in determining whether a warrantless entry was justified under the emergency assistance doctrine.  Accordingly, the test under the United States Constitution is now two-fold and requires considering "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable[.]" *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).  Although we apply the three-factor *Ryon* test to the facts of this case, our conclusion would be the same under the two-factor, federal test.

*Delgado*, 814 F. Supp. 2d 874, 883, 885 (E.D. Wis. 2011) (explaining that, under the emergency aid doctrine, "[t]he government has no right to enter a private residence on a mere whim that a person in need of assistance may be inside"). Hence, we do not believe that the second *Ryon* factor was satisfied under the circumstances known to the officers as they were described at trial.

**{25}** As to the third *Ryon* factor, whether there was some reasonable basis approximating probable cause to associate the emergency with the area or the place to be searched, there is nothing in the record to suggest that the officers had anything other than the location of Defendant's vehicle on which to base their assumption that he had entered the 1690 14th Avenue residence. The mere fact that Defendant's car was parked on the street in front of that address provided a tenuous basis for their assumption that Defendant had entered that particular residence. The location of Defendant's car, absent any visible or audible indicia of a disturbance or an emergency is insufficient to justify a warrantless police entry into the private residence under the emergency assistance doctrine. *See Ryon*, 2005-NMSC-005, ¶ 42 (explaining that "[t]o justify the warrantless intrusion into a private residence under the emergency assistance doctrine, officers must have credible and specific information that a victim is *very likely* to be located at a *particular place* and in need of immediate aid to avoid great bodily harm or death" (emphasis added)).

**{26}** Having reviewed the facts of this case as applied to the *Ryon* factors, we conclude that the record does not support the officers' warrantless entry based on the emergency assistance doctrine. We disagree with the district court's determination that "based on the information that [the officers] had at the time and based on the totality of the circumstances . . . their entry into the home was reasonable . . . [based on their concern for] the safety of any potential occupants of [the] residence[.]" And we conclude, contrary to the district court's observations on Defendant's motion for a new trial based on ineffective assistance of counsel, that had Defendant's counsel filed a motion to suppress, the record as it now stands would support such a motion. Further, we do not believe that a reasonably competent attorney could have decided that, under these circumstances, a motion to suppress was unwarranted. *See Martinez*, 1996-NMCA-109, ¶ 33. We therefore conclude that counsel's performance was unreasonable for Sixth Amendment purposes and that Defendant has satisfied the first prong of the ineffective assistance of counsel test.

**Prejudice to Defendant**

**{27}** Having established that counsel's performance fell below an objective standard of reasonableness, we must now determine whether Defendant suffered prejudice as a result. *See Strickland*, 466 U.S. at 687. In so doing, we must consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**{28}** As we have already indicated, at least based on the record before us, had Defendant's counsel filed a motion to suppress based on an unconstitutional warrantless police entry, we

8

believe such a motion would likely have been successful. Had Defendant's counsel made a successful suppression motion, all of the evidence gained as a result of the warrantless entry, including the results of Defendant's performance on the field sobriety tests and his breath alcohol results would have been suppressed. *See State v. Lujan*, 2008-NMCA-003, ¶ 21, 143 N.M. 233, 175 P.3d 327 (suppressing all evidence gained as a result of an improper entry into the defendant's home).

**{29}** A reasonable probability exists that, if a motion to suppress were successful, the State would likely be in a considerably less advantageous position for proving its case and that the outcome at trial would likely have been different. This is sufficient to satisfy the *Strickland* prejudice factor. *See* 466 U.S. at 694 (stating that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *cf. Patterson*, 2001-NMSC-013, ¶¶ 30-31 (stating that in evaluating the evidence to determine whether, upon a successful suppression motion, the defendant would have gone to trial rather than having pleaded no contest, the court does not attempt to predict the outcome of the trial). It follows, therefore, that Defendant was prejudiced by the deficient performance of his trial counsel, who failed to move for suppression.

## CONCLUSION

**{30}** Having concluded that Defendant has made an affirmative showing under both aspects of the *Strickland* test, we hold that Defendant has established a prima facie showing of ineffective assistance of counsel. Accordingly, we vacate his conviction and remand for a new trial. *Cf. Patterson*, 2001-NMSC-013, ¶¶ 33-34 (setting aside the defendant's no contest plea, vacating his conviction and sentence, and remanding the case to the district court based on trial counsel's deficient performance in failing to move to suppress evidence where the record supported suppression of key evidence).

**{31}** We reverse Defendant's conviction based on ineffective assistance of counsel and remand to the district court for a new trial.

**{32}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

9

**Topic Index for *State v. Crocco*, No. 31,498**

**APPEAL AND ERROR**
Prejudicial Error
Remand
Substantial or Sufficient Evidence

**ATTORNEYS**
Effective Assistance of Counsel

**CONSTITUTIONAL LAW**
Suppression of Evidence

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Effective Assistance of Counsel
Motion to Suppress
Warrantless Search

**EVIDENCE**
Blood/Breath Tests
Suppression of Evidence