This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                                                              **NO. 35,402**

**MIKEL A. MARTINEZ,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

<b>MEMORANDUM OPINION</b>

**VANZI, Chief Judge.**

{1}    Defendant Mikel Martinez appeals his jury convictions for drug offenses on the grounds that police lacked reasonable suspicion for the investigatory detention and probable cause for the arrest that followed. We reverse.

**BACKGROUND**

{2}    Defendant was charged and convicted of trafficking controlled substances with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(2) (2006); conspiracy to commit trafficking, contrary to NMSA 1978, Section 30-28-2 (1979); possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001); and possession of marijuana or synthetic cannabinoids, contrary NMSA 1978, Section 30-31-23(A) (2011). Before trial Defendant moved to suppress all evidence seized from his vehicle or person, all statements he made, and any fruits of the search or seizure, pursuant to Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment of the United States Constitution, on the basis that the police lacked reasonable suspicion. After a hearing the district court denied Defendant's motion to suppress for lack of reasonable suspicion. The court gave no reasons for its decision in the order. The following facts are derived from the investigating officer's affidavit, which Defendant did not contest below, and from the same officer's testimony at the motion hearing.

{3}    On March 20, 2014, Officer Donald Garrison of the New Mexico State Police, an agent for the Narcotics Investigation Section, was conducting surveillance at an Allsup's Convenience Store in Clovis, New Mexico for illegal narcotics transactions and other illegal activity. Officer Garrison, who had undergone specific narcotics training in his nineteen years on the force, had previously "observed and been involved with several illegal narcotics transactions at this store," which was a "popular place" for selling narcotics. During his surveillance on March 20, Officer Garrison observed Defendant, who was the driver of a red, four-door Chevrolet passenger car, drive up to the gas pumps. Defendant got out of the car and pumped gas into the vehicle. Another male was sitting in the front passenger seat. Defendant walked into the store as a "larger Hispanic male" walked to and entered the red Chevrolet and sat in a rear passenger seat. Defendant was not present at the vehicle at this time. In fact, the two men had passed each other as Defendant walked into the Allsup's, but Officer Garrison could not recall if they acknowledged each other. The "larger Hispanic male" stayed inside the car for about three minutes until he exited and walked toward the store. Shortly thereafter, Defendant left the store and reentered the car. Officer Garrison admitted he did not witness any hand-to-hand transaction, see hands moving back and forth, or the exchange of any money or drugs. Nonetheless, in his affidavit for the arrest warrant, Officer Garrison stated, "With my training and experience what [I] observed appeared to be an illegal narcotics transaction."

{4}     Defendant then left the gas pumps, drove the car to the south side of the store, and parked with the front of the vehicle facing the Allsup's. Officer Garrison changed his surveillance position and continued to observe the red Chevrolet. Not long afterward, a gray SUV parked next to the red Chevrolet and a "Hispanic female exit[ed] the gray SUV and enter[ed] the left rear passenger's seat of the red Chevrolet." She stayed inside the car for about two minutes, and Officer Garrison believed he had observed another illegal narcotics transaction based on his training and experience, particularly in light of the suspected transaction he had just previously witnessed. However, again he acknowledged that he did not witness any hand-to-hand transaction.

{5}     Once the female exited the red Chevrolet and drove away in the gray SUV, Officer Garrison drove his police car to the Allsup's. He activated his emergency lights and siren and parked behind the red Chevrolet, apparently blocking it in. Officer Garrison made contact with Defendant and the passenger and advised them of their *Miranda* rights. He explained why he had contacted them, and they both denied selling illegal narcotics. According to Officer Garrison, Defendant and the passenger "appeared to be very nervous, their hands were shaking and would not make eye contact while [he] was talking to them." Officer Garrison first removed the passenger from the vehicle and handcuffed him. After Officer Garrison handcuffed the passenger, he saw a "clear plastic corner baggie" that appeared to contain

4

methamphetamine on the ground next to right rear tire of the vehicle. After securing the baggie, Officer Garrison "detained" Defendant. Defendant and the passenger denied throwing the baggie on the ground. However, Defendant admitted that he had a marijuana pipe on him.

{6}     Both Defendant and the passenger denied consent to search the car. Officer Garrison requested a K-9 unit to respond to his location. The K-9 was deployed on the outside of the car and alerted on the right rear passenger side. Defendant and the passenger were permitted to leave the area, but Officer Garrison advised them that the vehicle must stay with him until a search warrant was obtained. A search warrant for the vehicle was approved and executed. Methamphetamine, marijuana, a methamphetamine pipe, a digital scale, and $96 were found in the vehicle. Also seized was the plastic baggie containing methamphetamine found laying next to the vehicle and the marijuana pipe on Defendant's person. Based on Officer Garrison's affidavit and a finding of probable cause, a warrant was issued for Defendant's arrest.

**DISCUSSION**

**Standard of Review**

{7}     We review the constitutionality of a search or seizure as a mixed question of fact and law. *State v. Ochoa*, 2009-NMCA-002, ¶ 6, 146 N.M. 32, 206 P.3d 143. We defer to the district court's findings of fact that are supported by substantial evidence and view the facts in a manner most favorable to the prevailing party. *State v. Prince*,

2004-NMCA-127, ¶ 8, 136 N.M. 521, 101 P.3d 332. Where, as in the present case, the district court entered an order denying Defendant's motion to suppress without making any specific findings of fact, we "will indulge in all reasonable presumptions in support of the district court's ruling." *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). The legal question whether there was reasonable suspicion for an investigatory detention is reviewed de novo by looking at the totality of the circumstances. *State v. Robbs*, 2006-NMCA-061, ¶ 9, 139 N.M. 569, 136 P.3d 570.

**The Stop Was Not Supported by Reasonable Suspicion**

{8}    Both the United States and New Mexico Constitutions protect against unreasonable searches and seizures. *See* U.S. Const. amend. IV ("The right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated[.]"); N.M. Const. art. II, § 10 ("The people shall be secure . . . from unreasonable searches and seizures[.]"). Arrests and investigatory detentions are seizures invoking constitutional protections. *Jason L.*, 2000-NMSC-018, ¶ 14. Specifically, an investigatory detention amounts to a seizure " 'whenever a police officer accosts an individual and restrains his freedom to walk away.' " *Id.* ¶ 15 (quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)).

{9}    An investigatory detention must be supported by reasonable suspicion of criminal activity. *State v. Wilson*, 2007-NMCA-111, ¶ 18, 142 N.M. 737, 169 P.3d

6

1184. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. "Individualized, particularized suspicion is a prerequisite to a finding of reasonable suspicion[.]" *Jason L.*, 2000-NMSC-018, ¶ 22. Police officers may not "forcibly stop an individual for purposes of investigation merely on the basis of an inchoate and unparticularized suspicion or hunch that criminal activity may be afoot." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted). "The purpose of requiring objectively reasonable suspicion based on the circumstances is to prevent and invalidate police conduct based on hunches, which are, by definition, subjective." *Ochoa*, 2009-NMCA-002, ¶ 25 (internal quotation marks and citation omitted).

{10} In Defendant's view, Officer Garrison lacked reasonable suspicion when he initiated his stop, and he argues that the officer, despite his experience and training, could not reasonably infer that Defendant participated in a narcotics transaction. Defendant additionally argues that Officer Garrison lacked specific information that linked Defendant to drug trafficking. The State concedes that Officer Garrison's knowledge that the Allsup's was a popular place for drug trafficking does not, standing alone, support reasonable suspicion. But the State argues that it is a relevant contextual consideration when viewed in light of the patterns observed by Officer Garrison. The State also alleges that it is not dispositive that Officer Garrison did not

actually witness any hand-to-hand transactions. For the reasons that follow, we agree with Defendant.

{11} The facts in *State v. Neal*, 2007-NMSC-043, 142 N.M. 176, 164 P.3d 57, are instructive in this case. In *Neal*, an officer observed a truck parked in front of a house that was being investigated for drug activity and, although he did not see a transaction or hear what was being said, the officer believed he witnessed a drug transaction when an unknown man leaned into the truck from the driver's side window. *Id.* ¶¶ 4-5. The officer eventually initiated a valid traffic stop. *Id.* ¶¶ 5, 22. During the stop the officer recognized the defendant as a person who had prior drug convictions and learned that the person who had leaned into the truck was under investigation for drugs. *Id.* ¶¶ 5, 7. During his interaction with the officer, the defendant was nervous and avoided eye contact. *Id.* ¶ 7. As in this case, the defendant did not consent to a search of the truck. *Id.* ¶ 8.

{12} Our Supreme Court declined to hold that the facts supported a finding of reasonable suspicion. *Id.* ¶ 32. The Court observed that the factors upon which reasonable suspicion was alleged to exist—the defendant being at a house under investigation for drug activity, speaking with a person known to be under investigation for drug activity, being nervous during contact with the police, and not providing consent to search the vehicle—did not "constitute the type of

8

individualized, specific, articulable circumstances necessary to create reasonable suspicion that [the d]efendant himself was involved in criminal activity." *Id.* ¶¶ 28, 31.

**{13}** Likewise, in the instant case, we conclude there was no reasonable suspicion for the stop because of the absence of specific and particularized incriminating facts. Here, the precise issue is whether there was reasonable suspicion for the initial investigatory detention—when Officer Garrison parked behind the red Chevrolet with lights and siren activated, curtailing Defendant's freedom of movement.

**{14}** As in *Neal*, Officer Garrison was conducting surveillance in a place where known drug activity occurred. *See id.* ¶ 4. Also like in *Neal*, the subjects' identities were unknown at the time of the stop. *See id.* ¶¶ 5, 7. Furthermore, in both *Neal* and the present case, an officer's specialized training led the officer to believe a drug transaction had occurred. *See id.* ¶ 31. In *Neal*, the officer believed a drug transaction occurred despite not seeing any hand-to-hand transaction when he observed an unknown man lean inside a driver's side window of a vehicle. *Id.* ¶¶ 4-5. Similarly, Officer Garrison believed he observed illegal narcotic transactions when two unknown persons sat in Defendant's vehicle for two to three minutes, although he did not witness any hand-to-hand transactions. In both situations, a police officer considered otherwise "innocent conduct" to be suggestive of illegal drug transactions, but as our Supreme Court held in *Neal*, such a scenario is insufficient grounds for reasonable suspicion under the type of circumstances presented here. *See id.* ¶ 31 (concluding that

9

the defendant's "innocent conduct and the surrounding circumstances" did not create reasonable suspicion that the defendant was engaged in illegal activity).

{15} The only basis for Officer Garrison's investigatory detention of Defendant was his unparticularized hunch that because the gas station was a known location for illegal drug activity and because two individuals got into Defendant's red Chevrolet—once at the gas pump and then when the car was parked in front of the store—he had necessarily witnessed two drug interactions. But, as we have previously observed, "[g]uilt by association and generalized suspicions are insufficient grounds upon which to base an investigatory detention." *Prince*, 2004-NMCA-127, ¶ 17. In sum, Office Garrison did not point to any individualized behavior or any specific articulable facts about Defendant, his passenger, or the two individuals that could support a finding of reasonable suspicion that Defendant was involved in the purchase or sale of illegal narcotics. Therefore, even considering his experience and training, it was not reasonable for Officer Garrison to conclude that Defendant was involved in drug transactions at the Allsup's.

{16} We acknowledge the State's contention that the procedural posture in *Neal* was different because the motion to suppress was granted in that case. However, we note that all inferences drawn in support of the district court's ruling must nevertheless be reasonable in light of specific, articulable facts. *See Jason L.*, 2000-NMSC-018, ¶ 11 ("[W]e will indulge in all *reasonable* presumptions in support of the district court's

ruling." (emphasis added) (internal quotation marks and citation omitted)). We conclude that it was not, as the only facts supporting the district court's ruling were that Officer Garrison had been involved with "several illegal narcotics transactions at this store in the past" and that, in his opinion, the two individuals who entered the vehicle established that an "illegal narcotics transaction occurred."

{17} We also decline the State's invitation to give weight to any inferences made by the district court regarding whether "the fact that the larger Hispanic man did not talk with Defendant on his way toward the car" supported a finding of reasonable suspicion. We first note that the oral remarks made by the district court do not suffice as findings of fact to which we defer. *See State v. Lohberger*, 2008-NMSC-033, ¶ 20, 144 N.M. 297, 187 P.3d 162 ("[A district] court's oral announcement of a result is not final[.]"). And the district court made no written findings of fact. Second, and more importantly, Officer Garrison testified at the hearing that he could not recall whether the two men had acknowledged each other, not that they did not talk to each other. To the extent the State argues that Defendant was engaged in a "pattern of behavior" justifying a valid investigatory stop, we disagree. Indeed, the State's contention that the "sequence of events did not occur only once, but twice" as it relates to Defendant is unsupported by the record. Officer Garrison's testimony established that Defendant was not even present when the larger Hispanic male entered the red Chevrolet; therefore, we cannot say that Defendant was engaged in any "pattern" of behavior.

11

**{18}** Accordingly, for the reasons stated and because we conclude *Neal* is controlling, we hold that, under the totality of the circumstances, there was no reasonable suspicion for the investigatory detention of Defendant.

**{19}** Because our holding that the initial investigatory detention was unlawful is dispositive and excludes all evidence obtained as a result of that detention, including the baggie found laying on the ground, any statements made by Defendant to police, the marijuana pipe, and all evidence seized in the vehicle, we do not reach the parties' probable cause arguments. *See State v. Lujan*, 2008-NMCA-003, ¶ 9, 143 N.M. 233, 175 P.3d 327 ("The fruit of the poisonous tree doctrine states that the exclusionary rule applies not only to evidence unlawfully seized, but also to evidence derived from the original illegality.").

**CONCLUSION**

**{20}** We reverse.

**{21}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**