2005-NMCA-015

105 P.3d 332

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Tommy GUTIERREZ, Defendant–
Appellant.**

**No. 24,188.**

Court of Appeals of New Mexico.

Dec. 3, 2004.

Certiorari Denied, No. 29,005, Jan. 24, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

KENNEDY, Judge.

{1} On motion for rehearing, the opinion filed October 28, 2004, is withdrawn, and the following opinion is substituted in its place. The motion for rehearing is otherwise denied.

{2} At what point in criminal proceedings does a defendant waive objection to the constitutionality of a search that produced evidence that is offered against him? Defendant postponed objecting to evidence of the cocaine and methamphetamine he possessed until after testimony was received concerning the search, the drugs' discovery, their transport, and the analysis confirming their composition and weight. When the State sought the drugs' admission into evidence, Defendant objected to their admission, alleging that they were the fruits of an unlawful search. The motion was denied, and Defendant was convicted on two counts of possession of drugs. Defendant now appeals. Defendant also appeals the enhancement of his sentence on the grounds that the Habitual Offender Act prohibits the use of his prior convictions more than ten years old. We determine that the search was illegal, and the evidence obtained should have been suppressed. Because of this determination, we do not reach the sentence enhancement issue. We reverse and remand to the district court for appropriate proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

{3} Defendant was charged with one count of trafficking cocaine and one count of possession of methamphetamine. At trial, the State's first witness, Deputy Gutierrez (no relation to Defendant), testified that on May 28, 2002, the Otero County Sheriff's department responded to a call regarding a drug overdose in La Luz, New Mexico. Upon arriving, he and another deputy found Defendant unconscious on the floor. Defendant's stepdaughter told the deputies that Defendant had overdosed on cocaine. An ambulance arrived at Defendant's residence soon thereafter to transport Defendant to the hospital. After the ambulance left, the two deputies talked for awhile at the scene. Deputy Gutierrez decided to go to the hospital, although no one asked him to do so. Deputy Gutierrez testified that in overdose situations, his concern is the safety of the victim.

{4} Deputy Gutierrez testified that at the hospital, he located Defendant in a treatment bay in the emergency room and observed while Defendant, still unconscious, received treatment from the medical personnel at the hospital. Deputy Gutierrez backed out of the bay for a few minutes to give Defendant some privacy, but soon looked back in the bay, where he saw Defendant's clothes lying on the floor. Without any request for (1) assistance from hospital personnel, (2) consent from Defendant, who was still unconscious, or (3) a search warrant, Deputy Gutierrez picked up Defendant's pants, searched the pockets, and found two plastic bags in the pockets. Deputy Gutierrez testified that he "didn't expect to find anything" when he searched Defendant's pants at the hospital because when he first saw Defendant at Defendant's residence, it appeared that Defendant's pants had already been searched because the pocket on the right side was already pulled out. However, he searched the pants at the hospital "[j]ust to see, maybe if there was just a little something, just enough to test to see if there was something to confirm what it was that [Defendant] had consumed." When asked, Deputy Gutierrez expressed that he had had some concern that Defendant's clothing might be taken away by Defendant's family. He said that he was not looking for criminal evidence; he was just helping out and did not expect to find anything. Deputy Gutierrez stated that Defendant looked bad and he didn't know if Defendant would "make it."

{5} Deputy Gutierrez believed the contents of the bags he retrieved from Defendant's pants to be controlled substances. Deputy Gutierrez took the bags to the Sheriff's Department where he field-tested the drugs with positive results for the presence of illegal controlled substances. He called Defendant's doctor at the hospital, relayed the information about the drugs, and put the drugs in the department's evidence locker. The drugs were later tested by a crime laboratory and found to be approximately eight

grams of cocaine and little more than one and a half grams of methamphetamine.

{6} At trial, prior to the opening statements, defense counsel informed the district court that it was his intention to object to the admission of the drugs at the time the State would move to admit them as evidence. Counsel stated that the objection would be "for [the] search and seizure [of the drugs], so basically, it's a motion to suppress in the middle of the trial, just to let you know that's what I plan to do." The State did not object or respond in any way. Trial commenced, and in opening statement, defense counsel left no doubt that Defendant had possessed the drugs but stated to the jury that the defense theory of the case would be that the possession was for personal use, not for trafficking, as charged in Count 1.

{7} The trial began and Deputy Gutierrez was called to the stand. He testified as previously discussed. The State then called a chemist, who testified as to the composition and weight of the drugs taken by Deputy Gutierrez. The State's next witness was a narcotics agent who discussed the drugs' chain of custody. At the end of his testimony, the State moved for admission of the drugs into evidence. The defense objected as promised and moved to suppress the evidence on the grounds that the warrantless search of Defendant's pants was not justified under any exception to the warrant requirement. The State argued that the situation presented an exigent circumstance of imminent danger to Defendant's life, that Deputy Gutierrez was acting in his capacity as a community caretaker, and that no warrant was needed. Although defense counsel responded that once Defendant arrived at the hospital the exigency disappeared, and the situation did not fit within the community caretaking exception, the district court denied the motion to suppress, ruling that the search was justified under the community caretaker standard. Specifically, the district court found that Deputy Gutierrez had considered that there was some merit in knowing the substance that Defendant had taken, and that the deputy did not believe he would find any substantial amount of controlled substances beside residue in his search be-cause it appeared Defendant's pants had already been searched. As a result, the district court found that Deputy Gutierrez was acting out of concern for Defendant's well-being and not under a desire to obtain evidence for use in a prosecution.

{8} The trial continued, and Defendant testified that he possessed and used the drugs, but that he did not deal drugs. Defendant was convicted of two counts of simple possession of controlled substances. The jury did not find Defendant guilty of trafficking.

## DISCUSSION

### Standard of Review

{9} Resolution of the issue presented concerning the suppression of evidence requires that we determine whether the actions of Deputy Gutierrez implicate a constitutional right or if those actions fall within an exception to that right. *State v. Nemeth*, 2001–NMCA–029, ¶ 20, 130 N.M. 261, 23 P.3d 936. Reviewing motions to suppress involves an analysis of both law and fact. *State v. Gutierrez*, 2004–NMCA–081, ¶ 4, 136 N.M. 18, 94 P.3d 18. The denial of a motion to suppress requires us to determine if the law was correctly applied to the facts. *Id.* We give deference to the factual findings of the lower court. *State v. Soto*, 2001–NMCA–098, ¶ 6, 131 N.M. 299, 35 P.3d 304. A "denial of a motion to suppress will not be disturbed if it is supported by substantial evidence unless it also appears that the ruling was incorrectly applied to the facts." *State v. Cline*, 1998–NMCA–154, ¶ 6, 126 N.M. 77, 966 P.2d 785. "The trial court must resolve conflicts in the evidence, but [w]hether that evidence complies with constitutional requirements is . . . a legal question reviewed by the appellate court on a *de novo* basis." *Soto*, 2001–NMCA–098, ¶ 6, 131 N.M. 299, 35 P.3d 304 (internal quotation marks and citation omitted and alterations in original).

### Search of Defendant's Pants and Seizure of the Drugs

{10} The Fourth Amendment of the United States Constitution and the New Mexico Constitution protect a citizen's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; N.M.

Const. art. II, § 10. The State also argues on appeal that there was no "search" for constitutional purposes because Defendant failed to meet his burden that Deputy Gutierrez violated his reasonable expectation of privacy. The State did not raise this point before the district court, and it cannot now be relied on as a basis to affirm on the ground that the court was correct for the wrong reason because Defendant did not have a fair opportunity to present evidence on the issue. *See State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). There is no dispute in this case that the search of Defendant's pants was without consent or a warrant. The State argues that Defendant was not in the custody of the police when his pants were searched, and the search was performed incident to a community caretaking function on the part of Deputy Gutierrez, and therefore the search does not implicate constitutional protections and was justified without a warrant.

**Warrantless Searches and Community Caretaking**

█ {11} "Because a warrantless search or seizure is presumed to be unreasonable, the State has the burden of showing that the search or seizure was justified by an exception to the warrant requirement." *Gutierrez*, 2004–NMCA–081, ¶ 6, 136 N.M. 18, 94 P.3d 18; *State v. Vasquez*, 112 N.M. 363, 366, 815 P.2d 659, 662 (Ct.App.1991). Recognized exceptions to the warrant requirement include "exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit." *State v. Duffy*, 1998–NMSC–014, ¶ 61, 126 N.M. 132, 967 P.2d 807. This Court has also recognized that, so long as certain criteria are met, the community caretaking function "can properly take its place in our jurisprudence as an exception to the Fourth Amendment warrant requirement." *Nemeth*, 2001–NMCA–029, ¶ 36, 130 N.M. 261, 23 P.3d 936. Our case law recognizes that there is "a community caretaking function of police officers requiring a specific, articulable concern for the safety of another that does not involve a law enforcement purpose." *Id.* ¶ 29. "The primary characteristic of community caretaking that sets this function apart from

criminal investigative and enforcement activity is the absence of concern about violations of law on the part of the law enforcement officer." *Id.* ¶ 36. These encounters are voluntary, may not involve coercion or detention, and do not invoke constitutional protections, as they may fall outside of the fourth amendment. *Id.* ¶¶ 26–27; *State v. Walters*, 1997–NMCA–013, ¶ 10, 123 N.M. 88, 934 P.2d 282. "[I]n a community caretaker case, reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Nemeth*, 2001–NMCA–029, ¶ 29, 130 N.M. 261, 23 P.3d 936 (internal quotation marks and citations omitted and alteration in original).

█ {12} Thus far, our cases have not had to concern themselves with the issue of "community caretaking" outside the realm of the constitutionality of seizing persons. *Walters*, 1997–NMCA–013, ¶¶ 10, 22, 123 N.M. 88, 934 P.2d 282 and *State v. Reynolds*, 117 N.M. 23, 24–25, 868 P.2d 668, 669–70 (Ct. App.1993), *rev'd on other grounds*, 119 N.M. 383, 890 P.2d 1315 (1995), allowed police officers to stop and seize persons in a vehicle to assuage their concerns for driver and passenger safety. These stops must be based on a "specific, articulable safety concern." *State v. Munoz*, 1998–NMCA–140, ¶ 8, 125 N.M. 765, 965 P.2d 349 (internal quotation marks and citation omitted). *Nemeth* extended the community caretaker doctrine to a situation which did not involve a citizen-police encounter in vehicles but instead involved a warrantless entry into a defendant's residence, a citizen-police encounter concerning a possibly suicidal defendant. *Nemeth*, 2001–NMCA–029, ¶¶ 3–18, 130 N.M. 261, 23 P.3d 936. It emphasizes that community caretaking exists apart from criminal investigation, stating:

> [L]aw enforcement officials have no carte blanche to enter homes to investigate circumstances of suspected criminal activity under a guise or pretext of community caretaking pursuits. Our application here of the community caretaker doctrine carries with it the expectation that law enforcement officers will continue to carry on such service, while at the same time re-

main subject to judicial scrutiny to assure that their actions are reasonable and not pretextual, and that their conduct is not outside the bounds of legitimate community caretaker activity.

*Id.* ¶ 41.

{13} Community caretaking can only be invoked when the police are not involved in crime-solving activities. *Id.* ¶ 38. It is the absence of a concern for violations of the law that characterizes police behavior in such a circumstance. *Id.* Applying our constitutional yardstick to the police behavior in a case, we look at whether the officers' actions were objectively reasonable and in good faith, particularly, whether the officer has a "reasonable and articulable belief, tested objectively, that a person is in need of immediate aid or assistance or protection from serious harm." *Id.* ¶ 37. Officers' actions are limited to ascertaining the immediate danger and directly addressing it; investigating other matters of which an officer becomes aware is permissible, but they cannot be the initial motivation for the police involvement. *See id.* ¶ 38.

**The Search of Defendant's Clothes is Not Justified by Community Caretaking**

{14} The search undertaken by Deputy Gutierrez was not a community caretaking encounter with Defendant, consensual or otherwise. Rather, it was a search of his property while Defendant was incapacitated. Deputy Gutierrez looked in the ER examination room, saw the clothing lying on the floor, and of his own volition entered the room, picked up the pants, and searched their pockets. The district court found that Deputy Gutierrez "was acting in a community caretaker function" in that the "exigency was in immediate danger to life of ... Defendant." Based on the testimony presented in the district court, this finding was not supported by substantial evidence.

{15} No evidence exists that Deputy Gutierrez was acting in concert with medical personnel; his actions were his own. To hold here that Deputy Gutierrez's course of action was legitimately to ascertain the drugs that affected Defendant to help with his treatment, ignores three things. First, Defendant was already being treated by medical personnel, and had been before Deputy Gutierrez arrived. Medical personnel requested no help from Deputy Gutierrez. Second, he learned what drugs were in the bags only after a span of time in which he left the hospital, went to the station and performed a screening test. Third, Deputy Gutierrez had some concern that Defendant's family might retrieve the clothing before he had a chance to look at it. The district court's finding that Deputy Gutierrez considered that there was merit to identifying the substances in the bags is irrelevant absent some evidence that Deputy Gutierrez's actions would have likely been helpful to medical efforts-that evidence was never offered by the State.

{16} As stated above, Deputy Gutierrez had neither permission nor warrant to search. He testified that he did not think it was important to find out what drug was involved, but that he was at the hospital with Defendant "just to help out." At the hospital, Deputy Gutierrez recognized the substances as drugs. He did not ascertain the medical utility of his actions. There was no testimony that Deputy Gutierrez showed the bags to the medical personnel at the hospital. He took the drugs to the sheriff's department and performed a field test, called Defendant's doctor with the results, and tagged the drugs into evidence. There was no testimony that Deputy Gutierrez ever returned to the hospital in connection with Defendant's continuing treatment at the hospital.

{17} Other jurisdictions have exceptions to the warrant requirement akin to the community caretaker doctrine that we consider in this case. The Supreme Court of Colorado defined a "medical emergency" exception to the warrant requirement in an emergency room situation. *People v. Wright,* 804 P.2d 866, 869–870 (Colo.1991) (en banc). Under this analysis, two factors predominate the analysis of warrantless searches and seizures. "[F]irst, there must be facts which, when objectively analyzed, establish the existence of a real and immediate danger to the life or safety of another; and second, the officer's purpose in conducting the search must be to render aid or assistance to the endangered person." *Id.* at 870; *see also*

*State v. Loewen,* 97 Wash.2d 562, 647 P.2d 489, 490–94 (1982) (en banc). Thus, Deputy Gutierrez's actions in this case fail to demonstrate evidentiary connection to medical needs similar to the lack of connection between warrantless searches and medical emergencies held to be fatal to searches in other jurisdictions.

{18} *Nemeth* set forth a test for the community caretaking function similar to that used in *Wright* mentioned above for Colorado's medical emergency exception to the warrant requirement. *Nemeth* states that the "test of legitimacy under the community caretaker doctrine is whether the officers' actions were objectively reasonable and in good faith. More particularly, the officer must have a reasonable and articulable belief, tested objectively, that a person is in need of immediate aid or assistance or protection from serious harm." *Nemeth,* 2001–NMCA–029, ¶ 37, 130 N.M. 261, 23 P.3d 936. Deputy Gutierrez's conduct does not pass this test. Here, Deputy Gutierrez was not asked to go to the hospital. He did not leave Defendant's residence to go to the hospital for five or ten minutes, and stated no reason for the wait. Upon his arrival, he observed Defendant being disrobed, and waited a few more minutes before searching the pants. Defendant had been under the care of medical personnel. The objective necessity for Deputy Gutierrez's actions to benefit Defendant was not established.

{19} Therefore, the State did not present substantial evidence as to the reasonableness of Deputy Gutierrez's belief that his aid and assistance was necessary. We determine that Deputy Gutierrez's search of Defendant's clothes was done "for the purpose of investigating possible criminal activity or obtaining incriminatory evidence, rather than pursuant to a non-criminal-related community caretaking function." *Nemeth,* 2001–NMCA–029, ¶ 38, 130 N.M. 261, 23 P.3d 936.

**Timing of the Motion to Suppress**

{20} Although Defendant waited to make an objection on the record until after the State had put on three of its witnesses who discussed the drugs, all parties and the district court were on notice as to what the defense intended because prior to trial, defense counsel informed the district court that he would be raising an issue concerning suppression of the drugs. He called it "a motion to suppress in the middle of trial," and the State did not object. In fact, when the motion was made after Deputy Gutierrez, the chemist, and the narcotics agent who transported the drugs to the laboratory testified, the State responded to the motion, including citing case law involving community caretaking. As with other cases involving the tactical decisions of trial counsel in other contexts, we do not wish to guess at what defense counsel was doing. *Cf. State v. Sanchez,* 120 N.M. 247, 254, 901 P.2d 178, 185 (1995) (stating that within the context of an ineffective assistance of counsel claim, this Court will not second guess the tactics or strategy of defense counsel). However, in the absence of an objection from the State to consideration of the motion, and its affirmatively arguing its merits to the district court, we hold that the State waived its objection to the motion. The question is whether the motion was timely.

{21} According to our rules, "[a] person aggrieved by a confession, admission or other evidence may move to suppress such evidence." Rule 5–212(B) NMRA 2004. The rules further state that "[a] motion to suppress shall be made within twenty (20) days after the entry of a plea, unless, upon good cause shown, the trial court waives the time requirement of this rule." Rule 5–212(C). Objections to evidence "must be sufficiently timely and specific to apprise the [district] court of the nature of the claimed error and to invoke an intelligent ruling by the court." *State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986). In *State v. Snyder,* 1998–NMCA–166, ¶ 4, 126 N.M. 168, 967 P.2d 843, defense counsel alleged an unlawful search and moved at trial to suppress photographs of seized marijuana. In *Snyder,* we ruled that the State's ability to use evidence at trial depended on the application of an exclusionary rule triggered by the constitutionality of a search and evaluated the constitutional claim. *Id.* ¶¶ 13–15. Questions concerning the constitutionality of a search and seizure are questions concerning fundamen-

tal rights of a party, including the right to be free of illegal searches and seizures. *State v. Gomez*, 1997–NMSC–006, ¶ 31, n. 4, 122 N.M. 777, 932 P.2d 1. There is no obligation for Defendant to move for suppression of evidence prior to trial, as we have held that "[t]he committee commentary to Rule 5–212 of the New Mexico Rules of Criminal Procedure specifically states that the Rules do not require [a] motion objecting to illegally seized evidence prior to trial." *State v. Ortega*, 114 N.M. 193, 198, 836 P.2d 639, 644 (Ct.App.1992) (internal quotation marks and citations omitted); Rule 5–212 Committee commentary. The fact that Defendant was outside the time limit of twenty days after his plea under Rule 5–212(C) might have served as grounds for not hearing or denying the motion or having it regarded in an unfavorable light, *e.g., County of Los Alamos v. Tapia*, 109 N.M. 736, 744, 790 P.2d 1017, 1025 (1990). However, that is not the case here. The district court was on notice of the motion, and the court did not penalize Defendant for ignoring the rule. The State was on notice, and the State responded and argued. Defendant preserved the issue for our review.

**Admission of Evidence Was Not Harmless Error**

■■■■ {22} The State argues that even if Deputy Gutierrez's search of Defendant's pockets was unconstitutional, any error in the admission of the drugs was harmless. Our Supreme Court stated that constitutional errors can only be considered harmless if we are able to "conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *State v. Johnson*, 2004–NMSC–029, ¶¶ 8–10, 136 N.M. 348, 353, 98 P.3d 998, 1003 (2004) (internal quotation marks and citation omitted). The State has the burden of demonstrating that the constitutional error was harmless beyond a reasonable doubt. *Id.* ¶ 9. In ascertaining whether the State has met this burden we must conduct an "objective reconstruction of the record of evidence the jury either heard or should have heard absent the error and a careful examination of the error's possible impact on that evidence." *Id.* ¶ 10.

{23} The only evidence of Defendant's possession of drugs was the result of the search of Defendant's pockets. Without the drug evidence or testimony concerning the seizure and the testing of the drugs, the State had no evidence to prove that Defendant possessed the drugs. The remedy for the illegal search is suppressing all the fruits of the search, including the testimony concerning its discovery. *See State v. Hawkins*, 1999–NMCA–126, ¶ 16, 128 N.M. 245, 991 P.2d 989 (stating that evidence obtained as the result of an illegal search is generally barred under the "fruit of the poisonous tree" doctrine).

{24} The procedural posture of this case is not as convoluted as it may seem. Despite the evidence that was presented to the jury by three witnesses, the only charges upon which Defendant was convicted concerned possession of drugs. The drugs Defendant was charged with possessing are the drugs Deputy Gutierrez took out of Defendant's pocket in the hospital. Therefore, the issue of identification whether these drugs removed from Defendant's pocket were a controlled substance depends on the legitimacy of the search. But, without the discovery of the drugs, there was nothing to identify or analyze, and there was no independent source for the evidence that Defendant possessed drugs that would not have been tainted by the illegal search. As a result, the failure of the district court to suppress this evidence cannot be considered harmless beyond a reasonable doubt. Suppression resolves the factual issue of the existence of the drugs in the case for all purposes.

**CONCLUSION**

{25} We therefore reverse the district court. The case is remanded for entry of an order granting Defendant's motion to suppress and for further proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and MICHAEL E. VIGIL, Judge.