This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                             **NO. A-1-CA-35887**

**JOSEPH MATTHEW FOSTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter M. Hart, III, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Joseph Matthew Foster (Defendant) appeals three convictions: possession of a controlled substance, possession of drug paraphernalia, and possession of a

firearm by a felon. On appeal, Defendant argues that (1) the State committed prosecutorial misconduct; (2) the district court erred in admitting police hearsay testimony, thereby violating his right to confront witnesses under the Confrontation Clause; (3) the three convictions were not supported by sufficient evidence; (4) he received ineffective assistance of counsel; and (5) cumulative error warrants reversal. Unpersuaded, we affirm.

**I.      BACKGROUND**

{2}     Lieutenant Lyndell Max Stansell and another officer responded to a call reporting the admission of a gunshot wound victim to Plains Regional Medical Center in Clovis. The victim, Benardo Baca, although alert and otherwise responsive, was reluctant to speak to Lieutenant Stansell about the shooting incident and unwilling to cooperate with the investigation. Despite Mr. Baca's recalcitrance, Lieutenant Stansell was able to determine that the shooting had taken place at a certain residence in Clovis and involved an individual named "Ace," an alias known by Lieutenant Stansell to be used by Defendant.

{3}     Upon arriving at the Clovis residence, Lieutenant Stansell joined other responding officers who had already made contact with the occupants of the house. Lieutenant Stansell observed .25 caliber shell casings in the driveway and detected a "faint odor" of marijuana inside the house. The officers secured the residence and waited for the issuance of a search warrant. In addition to Defendant, also present

3

in the house were two adult females, at least one of whom was Defendant's daughter,[1] six young children, and the boyfriend of one of the adult females. The boyfriend was the only person present who did not permanently reside at the home.[2] Lieutenant Stansell conducted a pat-down search of Defendant, who thereafter proceeded to a neighbor's house. When officers later attempted to question Defendant, they learned from neighbors that he had left the area.

{4}     Also responding to the scene was Detective Adriana Munoz. Munoz testified that, prior to issuance of the search warrant, she entered the house with the consent of Defendant's adult daughter and ascertained which bedrooms belonged to whom. Soon thereafter, the search warrant was issued and officers searched the residence. In the bedroom that Detective Munoz believed belonged to Defendant, she discovered a chest containing male clothing, a .22 caliber magazine, and boxes of .22 and .25 caliber ammunition, as well as a jewelry box containing a needle filled with liquid, a spoon with a crystal-like substance, a scale used to weigh narcotics, women's jewelry, and tampons. Police later determined that the substance inside the needle and on the spoon was methamphetamine. Detective Munoz also

[1] The record is unclear as to whether the second female encountered by police at the scene was also Defendant's daughter or, instead, his niece. This fact, however, is immaterial to our analysis.

[2] Defendant's statement to police indicated that he lived at the residence with his daughters, grandchildren, grandnieces, and grandnephews, "but no one else."

4

recovered a pink firearm in a common area of the residence that could fire .25 caliber bullets.

**{5}** Defendant was interviewed by a police interrogator several days later and, after being given *Miranda* warnings, provided several incriminating statements relevant to this appeal. Defendant admitted that he was sick on drugs and a drug addict. Defendant also acknowledged awareness of the pink firearm in the house and, while denying being the shooter, indicated that the police would probably find his fingerprints on the pink gun. As to who shot Mr. Baca, Defendant conceded that he (Defendant) went by the name "Ace," but maintained that his nephew, Shawn Acey, was the shooter and that others often confused him with his nephew.

**{6}** The State subsequently charged Defendant with aggravated battery based on the shooting of Mr. Baca, possession of a controlled substance, possession of drug paraphernalia, and possession of a firearm by a felon.

**{7}** At trial, Detective Munoz testified that she "deduced through information" that the bedroom containing the chest and jewelry box belonged to Defendant. When Detective Munoz was asked on direct examination about the search of that bedroom, Defendant's trial counsel objected, arguing during a bench conference that the officer's conclusion that the bedroom was Defendant's was based solely on hearsay. The district court overruled the objection, allowing Defendant to cross-examine Detective Munoz on that issue.

**{8}** During the ensuing cross-examination, defense counsel asked if it was true that "someone told you that that was [Defendant's] room?" Detective Munoz responded, "Yes." Counsel then asked Detective Munoz whether Defendant had admitted that it was his room. Detective Munoz responded in the negative, adding that she had concluded that Defendant resided in that bedroom because it was the only room in the house that contained male clothing and Defendant was the only adult male known to live in the house.

**{9}** The State, after resting its case, and despite having represented to the jury in its opening statement that Mr. Baca would testify at trial, voluntarily dismissed the aggravated battery charge against Defendant based on Mr. Baca's failure to appear as a witness. Reprising his previous hearsay objections, Defendant asked the district court to strike Detective Munoz's testimony pertaining to Defendant's occupancy of the bedroom in question and to provide a curative instruction. The district court denied Defendant's request, citing as grounds the record evidence supporting Detective Munoz's assessment that the bedroom belonged to Defendant and noting defense counsel's failure to request a curative instruction at the time the officer testified several hours earlier.

## II.    DISCUSSION

### A.    Prosecutorial Misconduct

6

{10} Defendant argues the State committed prosecutorial misconduct when it stated during opening statement that Mr. Baca would testify at trial regarding the aggravated battery count, only to later dismiss the count when Mr. Baca failed to appear for trial. In this regard, Defendant points out that the State was obviously aware of Mr. Baca's lack of cooperation and of the possibility that he might not appear for trial. On another score, Defendant argues that the State misrepresented the nature of the relationship between the shell casings found at the scene and the firearm found in the residence.

{11} We begin by noting that Defendant has raised his claim of prosecutorial misconduct for the first time on appeal. In these circumstances, this Court will review the claim only for fundamental error. *See State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 50, 399 P.3d 367 (internal quotation marks and citation omitted).

{12} With respect to Defendant's initial contention that the State committed prosecutorial misconduct by failing to dismiss the aggravated battery charge prior to trial, we observe that Defendant provides no support for his underlying premise that when the state is unaware of whether a witness will testify or unsure of what

7

that witness might say in the event he or she testifies, the count or counts at issue must be dismissed. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (indicating that where a party cites no authority to support an argument, we may assume no such authority exists). We consider this proposition no further.

{13}     Defendant next argues that the State committed prosecutorial misconduct during the opening statement by discussing the aggravated battery charge, and stating that Mr. Baca would testify, despite knowing otherwise. "If the prosecutor, in his opening statement stated facts, having reason to believe such facts could not be proved, that would be evidence of bad faith." *State v. Torres*, 1970-NMCA-017, ¶ 41, 81 N.M. 521, 469 P.2d 166. *But see State v. Fuentes*, 1978-NMCA-028, ¶ 17, 91 N.M. 554, 577 P.2d 452 (finding no evidence of bad faith on the part of the prosecutor in referring during opening statement to the potential testimony of a witness who ultimately did not testify). However, that is not what occurred in this case. It appears instead that the State believed it could prove the aggravated battery charge with the benefit of Mr. Baca's testimony, and continued its efforts to contact him throughout the trial.[3] *See State v. Martinez*, 1971-NMCA-115, ¶ 9, 83

---

[3] It is true, as Defendant notes, that the State represented to the district court a month prior to trial that it did not "believe we will be able to go forward . . . based on the lack of cooperation from Mr. Baca." However, we view this statement only as a recitation of the obvious reality that the aggravated battery charge would

8

N.M. 9, 487 P.2d 919 ("This is not a case where the prosecutor, in his opening statement, stated facts which he had reason to believe could not be proved."). Further, as trial progressed the State attempted to prove Defendant committed aggravated battery by use of other evidence. For example, Lieutenant Stansell testified that police officers observed Mr. Baca's gunshot wound and were informed that "Ace" might be involved. The State also tried to link the shooting to Defendant by comparing the .25 caliber casings found in the driveway, where the shooting occurred, and the .25 caliber ammunition found in Defendant's bedroom and loaded in the pink firearm, which Defendant admitted to handling. Most importantly, the State made clear that it did not know the substance of Mr. Baca's anticipated testimony but that it nonetheless planned to put Mr. Baca on the stand and elicit his testimony. We conclude that the prosecutor's actions fell significantly short of the rigorous fundamental error standard needed to establish actionable misconduct. Although the State wrongly informed the jury—at its own peril—that Mr. Baca would testify, that representation, standing alone and without more, did not rise to the level of "extreme disregard for the truth, and such a clear intent to influence the jury by false statements, as would warrant a reversal of the case[.]" *State v. McDonald*, 1915-NMSC-080, ¶ 3, 21 N.M. 110, 152 P. 1139 (internal quotation marks and citation omitted); *see id.* (recognizing that a prosecutor's

be difficult to prove without Mr. Baca's testimony, and not that the State definitively knew that Mr. Baca would not testify.

"overstatement" during opening statement is "[u]sually . . . prejudicial" to the state (internal quotation marks and citation omitted)); *see also State v. Gilbert*, 1982-NMSC-137, ¶ 15, 99 N.M. 316, 657 P.2d 1165 (finding no bad faith where the discrepancies in the prosecutor's opening statement and the testimony presented did not prejudice the defense).

{14}   In sum, we find no basis in the record to question the bona fides of the State's expressed intention to call Mr. Baca as a witness or its efforts to secure his testimony. Thus, we conclude that there was no prosecutorial misconduct in connection with the State's opening statement or its ensuing dismissal of the aggravated battery count, and thus no fundamental error upon which reversal could be premised.

{15}   Nor did the State commit prosecutorial misconduct—and certainly none approaching fundamental error—by stating in its closing argument that the shell casings found in the driveway matched the bullets found in Defendant's bedroom, and this despite the lack of any ballistics testing. While the State indicated in its opening statement that it would demonstrate that Defendant had shot Mr. Baca, it never affirmatively stated, during closing argument or otherwise, that any ballistics testing was done. Indeed, Detective Munoz herself confirmed the absence of ballistics testing during her testimony. While the prosecutor explained in closing that the shell casings found outside the house matched the "exact kind" of

10

ammunition found in the pink firearm and in Defendant's bedroom, no representation was made to the jury that the pink gun was the shooting weapon in this case. Indeed, this portion of the prosecutor's closing statement was consistent with Detective Munoz's unobjected-to trial testimony that the shell casings found in the driveway were of the same caliber as the ammunition recovered from the pink firearm and in other areas of Defendant's bedroom.[4] Thus, the prosecutor's comments in closing argument did not deviate from the evidence or cause Defendant any discernible prejudice. *See State v. Montgomery*, 2017-NMCA-065, ¶ 13, 403 P.3d 707 ("During closing arguments, remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument." (internal quotation marks and citation omitted)). We again conclude that no act of prosecutorial misconduct took place and that no fundamental error occurred.

**B.     Hearsay and Confrontation Issues**

{16}     Defendant argues that the district court committed reversible error by admitting hearsay evidence adduced during the State's questioning of Detective Munoz regarding which inhabitant(s) of the house lived in the bedroom containing the incriminating evidence, i.e., the needle, spoon, and ammunition. This Court reviews evidentiary determinations under an abuse of discretion standard. *See State*

---

[4] We note that Defendant has not challenged, either at trial or on appeal, the competency of Detective Munoz or Lieutenant Stansell to testify regarding the caliber of the ammunition or the pink firearm recovered at the scene.

*v. Jaramillo*, 2012-NMCA-029, ¶ 17, 272 P.3d 682. "We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Apodaca*, 1994-NMSC-121, ¶ 23, 118 N.M. 762, 887 P.2d 756 (internal quotation marks and citation omitted).

{17}   Defendant contends that Detective Munoz's testimony regarding which bedroom belonged to Defendant constituted inadmissible hearsay as it stemmed either from the statement of Defendant's daughter or the other adult female at the scene, neither of whom testified, and Detective Munoz otherwise had no personal knowledge of the matter, as required by Rule 11-602 NMRA. *See State v. Smith*, 2001-NMSC-004, ¶ 21, 130 N.M. 117, 19 P.3d 254 (noting that under Rule 11-602 a witness must have "personal knowledge of a matter to testify"). Defendant asserts that this led to two errors by the district court, the first in improperly permitting Detective Munoz to testify, and the second, in refusing to give a curative instruction so that the jury would not consider the testimony as substantive evidence. In Defendant's view, there was no other evidence upon which the jury could have found that Defendant possessed the methamphetamine, drug paraphernalia, or the firearm.

{18}   Defendant's argument misunderstands the hearsay rule and mischaracterizes the manner in which the officer's testimony was admitted at trial. First, Rule 11-801(C) NMRA defines hearsay as a "statement that (1) the declarant does not make

while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Detective Munoz's testimony, however, did not fall within the ambit of the rule. Granted, no witness with personal knowledge of the location of Defendant's bedroom testified as to that issue and, in result, any testimony from Detective Munoz as to what she was told by others about the location of Defendant's bedroom would have been hearsay had the prosecution offered it into evidence to prove that Defendant inhabited the bedroom containing the incriminating evidence. But here, on direct examination, Detective Munoz testified only that she "deduced through information" that the bedroom was Defendant's. As the district court noted in denying Defendant's subsequent motion to strike Detective Munoz's testimony, that information was derived not from a hearsay source, but rather from the officer's personal observations and deductions from facts in evidence, including those relating to the layout of the house, the age and gender of its residents, and the nature of the clothing found in the bedroom containing the contraband.

{19} Significantly, it was only during cross-examination by Defendant's attorney that Detective Munoz was directly asked whether she was told by someone other than Defendant that the bedroom in question was his, a question to which she responded affirmatively. Thus, the challenged testimony was elicited not by the State, but by Defendant, in order to discredit the basis upon which Detective

13

Munoz believed that the bedroom was Defendant's. "It is well established that a party may not invite error and then proceed to complain about it on appeal." *State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870. "To allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice." *State v. Handa*, 1995-NMCA-042, ¶ 35, 120 N.M. 38, 897 P.2d 225 (alteration, internal quotation marks, and citation omitted).

**{20}** In the final analysis, Detective Munoz had independent, personal knowledge that the bedroom containing the contraband was Defendant's—and this irrespective of what she may have been told by others at the scene—thus rendering her testimony akin to a lay opinion under Rule 11-701 NMRA. *See Sanchez v. Wiley*, 1997-NMCA-105, ¶ 17, 124 N.M. 47, 946 P.2d 650 (indicating that lay opinion testimony under Rule 11-701 is permissible when it is rationally based on the perception of the witness and helpful in the determination of a fact at issue). Under these circumstances, we find no abuse of discretion in the district court's decision to overrule Defendant's hearsay objection, or its denial of Defendant's subsequent motion to strike Detective Munoz's testimony in this regard and provide a curative instruction to the jury.

**{21}** Nor does Defendant stand on firmer ground in arguing that the admission of this same testimony violated his right to confront the witnesses against him under the Confrontation Clause. *See State v. Montoya*, 2014-NMSC-032, ¶ 21, 333 P.3d

14

935 ("The Confrontation Clause of the Sixth Amendment guarantees all criminal defendants, state and federal, the right to be confronted with the witnesses against them." (internal quotation marks and citation omitted)). Again, because Defendant did not object below on these grounds, our review of this claim is limited to fundamental error. *See State v. Jimenez*, 2017-NMCA-039, ¶ 13 n.3, 392 P.3d 668, *cert. denied*, ___-NMCERT-___ (No. S-1-SC-36346, Apr. 6, 2017).

{22}     Defendant's confrontation-related arguments rely on similar assumptions as those underlying his hearsay argument. Specifically, Defendant contends that he was unable to confront any witness regarding whatever statement(s) may have been made to Detective Munoz identifying which bedroom in the residence was his. Under the Confrontation Clause, "an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation omitted). Again, Defendant attempts to assign exclusive probative value to what Detective Munoz was told at the scene while ignoring the probative value of what she personally learned during her ensuing investigation. It again bears emphasis that the State did not offer the disputed statement through Detective Munoz's direct testimony and that Detective Munoz identified her own independent criteria for concluding that the bedroom

15

containing the contraband belonged to Defendant. At bottom, Defendant may not now interject a Confrontation Clause issue arising from his own cross-examination questioning, a shadowy semblance of an issue based on little more than a vague and superfluous witness statement that the State itself did not elicit. Thus, we conclude that there was no violation of the Confrontation Clause amounting to fundamental error. *See Handa*, 1995-NMCA-042, ¶ 35 ("[T]he doctrine of fundamental error has no application in cases where the defendant, by his own actions, invites error.").

## C. Sufficiency of the Evidence

{23} Defendant claims that there is insufficient evidence to support any of his three convictions. A defendant may raise a sufficiency challenge for the first time on appeal. *See State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295.

{24} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence consists of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661. This Court views the evidence in a light most favorable to the verdict, indulging all reasonable

inferences and resolving all conflicts in the evidence in favor of the verdict. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "We do not reweigh the evidence and may not substitute our judgment for that of the fact finder, so long as there is sufficient evidence to support the verdict." *State v. Brietag*, 1989-NMCA-019, ¶ 9, 108 N.M. 368, 772 P.2d 898.

{25}    All three of Defendant's convictions share the common element of possession, and possession is the only element Defendant now asserts is unsupported by substantial evidence. The jury instructions given at trial only define possession in the context of the drug possession charge, and did so as follows:

> A person is in possession of methamphetamine when he knows it is on his person or in his presence, and he exercises control over it. Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it. Two or more people can have possession of a substance at the same time. A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

Defendant was not in actual possession of the contraband found in the bedroom, making this a constructive possession case. *See State v. Garcia*, 2005-NMSC-017, ¶ 13, 138 N.M. 1, 116 P.3d 72 (reviewing a defendant's felon in possession of a firearm conviction). Therefore, in order to sustain Defendant's convictions, the

17

appellate courts "must be able to articulate a reasonable analysis that the fact-finder might have used to determine knowledge and control." *Id.* (alteration, internal quotation marks, and citation omitted).

**{26}** Defendant relies mainly on *Brietag* and *Garcia* in arguing that there is insufficient evidence linking him to the contraband recovered from what was shown to be his bedroom. In *Brietag*, police observed the defendant going to and coming from a house that he rented, although officers could not say who actually lived at the house. 1989-NMCA-019, ¶ 3. Seven or eight individuals were staying at the house when police executed a search warrant, but the defendant was not present. *Id.* ¶¶ 3, 8. Upon searching the house, the police found, among other things, methamphetamine, marijuana, cocaine, and numerous items identifying the defendant in one of the bedrooms. *Id.* ¶¶ 4, 6. However, the defendant had been living at another location for about a month prior to the search, and the bedroom in question was actually a "crash pad" occupied by a number of people and contained items identifying other individuals. *Id.* ¶¶ 8, 16. Based on those facts, this Court held that there was insufficient evidence to establish "a rational connection between the location of the drugs and [the] defendant's knowledge and control sufficient to prove constructive possession beyond a reasonable doubt." *Id.* ¶ 16. We further noted that "[t]he inference of knowledge and control of drugs, based on

proximity to personal belongings, arises from the extent of control the owner or lessee exercises over the area where drugs are found." *Id.* ¶ 17.

{27} To be contrasted is *Garcia*, where police discovered a firearm behind the passenger's seat of a car containing two occupants, the defendant and the driver. 2005-NMSC-017, ¶ 4. Police also discovered the ammunition clip for the firearm on the passenger's seat where the defendant had been sitting. *Id.* The defendant was convicted of being a felon in possession of a firearm, and our Supreme Court affirmed, finding sufficient evidence of knowledge and control. *Id.* ¶ 15. The *Garcia* Court concluded that there was sufficient evidence to create a reasonable inference that the defendant had knowledge of the firearm because the defendant had placed a beer bottle right next to the gun, acted in a manner that showed consciousness of guilt, and was sitting on the ammunition clip. *Id.* The Court in *Garcia* noted that, because there were two occupants in the vehicle who had equal access to the firearm, the State needed more than just physical proximity to establish control of the firearm, a standard found to have been met by the presence of the ammunition clip. *Id.* ¶¶ 21-22. "The clip was fully loaded and fit the gun located directly under [the d]efendant's seat, directly linking the clip to the gun." *Id.* ¶ 22. Pivotal was that control over the clip, which gave rise to control over the gun. *Id.*

{28} For its part, the State relies on another constructive possession case, *State v. Muniz*, 1990-NMCA-105, ¶ 1, 110 N.M. 799, 800 P.2d 734. In *Muniz*, police executed a search warrant of the defendant's home while he was incarcerated. *Id.* ¶ 5. When police executed the warrant, the defendant's mother and several children occupied the home. *Id.* The officers located marijuana in the closet of one of the three bedrooms within the home. *Id.* ¶ 6. The defendant, relying on *Brietag*, argued that there was insufficient evidence to convict him of possession of the marijuana. *Muniz*, 1990-NMCA-105, ¶ 8. This Court disagreed. *Id.* ¶ 15. Similar to the case at bar, the jury in *Muniz* was instructed that two or more people may have possession of an object at the same time. *Id.* We stated that "[e]ven if someone else had knowledge of the presence of the marijuana in the bedroom and exercised some control over it, [the] defendant could also have had sufficient knowledge and control to be in constructive possession." *Id.* We found dispositive the facts that the defendant confessed to being a drug trafficker, kept a "black book" he used for his drug transactions at his residence, used the bedroom in which the marijuana was found to keep his correspondence, including a bill for the pager used in his drug transactions, and that the marijuana found in the bedroom closet was packaged for sale. *Id.* ¶¶ 15-17.

{29} We view the teachings of *Brietag*, *Garcia*, and *Muniz* to support affirmance in this case. Here, the State presented additional evidence tying the needle, spoon,

20

and firearm to Defendant beyond just their respective locations within a residence occupied by multiple people. *See State v. Howl*, 2016-NMCA-084, ¶ 31, 381 P.3d 684 (holding that when a defendant does not have exclusive control over the area where contraband is found "additional circumstances, including the conduct of the accused, are required" to infer constructive possession). First and foremost, the jury could reasonably have accepted that the bedroom in question was Defendant's based on the evidence showing that Defendant was the only permanent male resident of the house and that the bedroom was the only one that contained male clothing. Notably, the male clothing was found not just in the same room, but in the same chest, as the ammunition. The jury was also aware that Defendant admitted to handling the pink firearm, and that the same caliber of bullets that were loaded in the pink gun were also found in the chest in the bedroom. Significant, too, was Defendant's abrupt disappearance during the execution of the search warrant and his attempted flight from the scene, conduct demonstrating a consciousness of guilt. *See State v. Sizemore*, 1993-NMCA-079, ¶ 11, 115 N.M. 753 (recognizing that flight can demonstrate consciousness of guilt). These factors, together with Defendant's admission that he was a recent drug user and a drug addict, were sufficient to support an inference of constructive possession. This is so notwithstanding the presence of women's jewelry and other belongings in Defendant's bedroom. *See Rojo*, 1999-NMSC-001, ¶ 19 ("In reviewing the

21

sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary.").

{30} Similarly, there is sufficient evidence of knowledge and control to support the conviction for possession of a firearm by a felon, and this despite the recovery of the pink firearm in a common area of the house. Significant to our analysis are Defendant's admissions that he knew the firearm was in the residence and that his fingerprints were probably on it, his ability to identify its unique color, and the unopposed evidence that the firearm was suitable for firing ammunition of the type found in the chest in Defendant's bedroom. *See Jimenez*, 2017-NMCA-039, ¶ 48 ("A defendant's ability to exercise control over ammunition may give rise to an inference of control over a firearm that can utilize that ammunition.").

{31} Consequently, we hold that there is sufficient evidence that Defendant had knowledge and exercised control over the methamphetamine and drug paraphernalia to support the guilty verdict on these two charges. We hold as well that there was sufficient evidence to convict Defendant for possession of a firearm by a felon.

**D.    Ineffective Assistance of Counsel**

{32} Defendant makes two distinct claims of ineffective assistance of counsel. Specifically, he argues that his trial counsel was not reasonably competent because

he did not give a closing argument, thereby communicating to the jury that Defendant was guilty and did not have a defense. Additionally, Defendant asserts that his trial counsel had a conflict of interest based on his concurrent representation of another defendant in an unrelated criminal case who potentially could have served as a witness against Defendant in this matter.

{33} This Court reviews claims for ineffective assistance of counsel de novo. *See State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. The right to effective assistance of counsel is guaranteed by both the Federal and State Constitutions. *See State v. Brazeal*, 1990-NMCA-010, ¶ 14, 109 N.M. 752, 790 P.2d 1033. This Court will presume that a defendant received effective assistance of counsel unless the defendant demonstrates that (1) counsel was not reasonably competent, and (2) counsel's incompetence caused the defendant prejudice. *See State v. Sanchez*, 1995-NMSC-053, ¶ 20, 120 N.M. 247, 901 P.2d 178.

{34} The record here reveals that defense counsel's decision to forego a closing argument was a tactical decision. During a bench conference prior to closing argument, defense counsel specifically represented that he was waiving the closing as a strategy as he had successfully done previously in other cases. Defense counsel could reasonably have decided that the State had not met its burden in establishing the critical element of possession or that it might prove counterproductive to argue in defense that the bedroom was not Defendant's if the

23

jury were convinced to the contrary. Regardless, "this Court will not second guess the tactics or strategy of defense counsel." *State v. Gutierrez*, 2005-NMCA-015, ¶ 20, 136 N.M. 779, 105 P.3d 332; *see also Sanchez*, 1995-NMSC-053, ¶ 20. Thus, we hold that defense counsel's waiver of closing argument did not constitute ineffective assistance of counsel. Given this conclusion, we need not address whether Defendant suffered any prejudice as a result of counsel's waiver of closing argument.

**{35}** Turning to that portion of Defendant's ineffective assistance claim premised on counsel's supposed conflict of interest, we analyze such claims differently than other ineffective assistance claims. *See Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657 ("[T]he analysis of an ineffective assistance of counsel claim based on a conflict of interest requires a different analysis than the more typical ineffective assistance of counsel claim based on lack of competence and resulting prejudice."). Under the governing analysis, this Court presumes prejudice when counsel is burdened with an actual conflict of interest. *Id.* ¶ 11. "[T]o invoke such a presumption of prejudice, there must be an actual, active conflict that adversely affects counsel's trial performance; the mere possibility of a conflict is insufficient." *State v. Martinez*, 2001-NMCA-059, ¶ 24, 130 N.M. 744, 31 P.3d 1018; *see also Rael*, 2007-NMSC-006, ¶ 11 (indicating that the burden is on the

defendant to make such a showing). Defendant has the burden to make this showing. *Rael*, 2007-NMSC-006, ¶ 11.

**{36}** Defendant has failed to show that defense counsel had an actual conflict that adversely affected his trial performance. The potential conflict cited by Defendant appears to be only hypothetical and unrelated to this case. Furthermore, Defendant was aware of the potential conflict prior to trial, elected to waive the conflict in writing, and affirmatively represented to the district court that he understood that there was a potential conflict. Based on the record before us, Defendant has not made a prima facie showing of ineffective assistance of counsel. However, Defendant may bring an ineffective assistance of counsel claim by way of a habeas proceeding. *See State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 27, 409 P.3d 992.

**E.      Cumulative Error**

**{37}** Lastly, Defendant asserts that the combination of all the previous errors warrant reversal of his convictions based on the cumulative error doctrine. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61. We have no occasion to address this

argument in light of our holdings that the district court did not commit any errors, much less multiple errors.

**III.     CONCLUSION**

{38}     For the aforementioned reasons, we affirm.

{39}     **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**EMIL J. KIEHNE, Judge Pro Tempore**

_____
**DANIEL J. GALLEGOS, Judge Pro Tempore**